18657

James S. REID, as Administrator of the Estate of Elizabeth Louise Reid, Respondent, v. M. B. SWINDLER, Margaret B. Swindler, Timothy M. Swindler, and one 1962 Ford automobile, bearing 1963 South Carolina License number E-9762, of whom all but M. B. Swindler are, Appellants.

(154 S. E. (2d) 910)

*Messrs. Melton Kligman, Frank L. Taylor and Kermit S. King,* all of Columbia, *for Appellants,*

*Messrs. McLeod & Singletary,* of Columbia, *for Respondent,*

May 29, 1967.

Moss, Chief Justice.

Elizabeth Louise Reid, a six year old girl, came to her death as a result of being struck by an automobile driven by Timothy M. Swindler, an appellant herein, in the City of Columbia, on November 13, 1962. Thereafter, the respondent was duly appointed as administrator of her estate and brought this action, pursuant to Section 10-1951 *et seq.* of the 1962 Code, for the benefit of the parents, for the alleged wrongful death of his intestate.

The complaint alleged that the respondent's intestate came to her death as a proximate result of the negligent, reckless and willful conduct of Timothy M. Swindler, a minor over the age of fourteen years, while he was operating an automobile which was owned by, his parents, Margaret B. Swindler, an appellant herein, and M. B. Swindler. The complaint further alleged that said automobile was provided and maintained for the general use and pleasure of the Swindler family and at the time of the accident it was being operated by Timothy M. Swindler, a member of the family, "with the consent, knowledge, acquiescence, approval and under the direction of * * * Margaret B. Swindler and M. B. Swindler and in their interests and behalf * * * in the business for which the car was purchased, to wit, for the general use of the family", who by reason thereof was the agent of M. B. Swindler and Margaret B. Swindler. The answer denied any negligent, reckless or willful conduct on the part of Timothy M. Swindler and denied that there was any liability to the respondent under the family purpose doctrine. With regard to the family purpose doctrine it was alleged that the automobile in question was owned by Timothy M. Swindler but the title certificate and registration card showed his mother, Margaret B. Swindler, as the owner because the automobile was financed for him by her.

The case came on for trial before the Honorable C. Bruce Littlejohn, Presiding Judge, and a jury, at the 1964 No-

vember term of the Court of Common Pleas for Richland County, and resulted in a verdict against Margaret B. Swindler, Timothy M. Swindler and the automobile in the amount of $25,000.00 actual damages. Prior to the submission of the case to the jury, a verdict was directed in favor of M. B. Swindler. A motion for a directed verdict in favor of the other appellants was appropriately made and was refused by the trial judge. After the verdict, the appellants made timely motions for judgment *non obstante veredicto* and, in the alternative, for a new trial, and for a new trial *nisi*. These motions were denied by the trial judge and this appeal is from his order denying such.

In considering the exceptions charging error on the part of the trial judge in refusing to direct a verdict and to grant judgment *non obstante veredicto,* we must consider the evidence and all inferences reasonably deducible therefrom most strongly against the moving party and most favorably to the non-moving party. Since there has been a verdict by a jury in this case, we must adopt the view of the evidence most favorable to the verdict and give it the strongest probative force of which it will admit. *Grier v. Cornelius,* 247 S. C. 521, 148 S. E. (2d) 338.

It appears from the record that Timothy M. Swindler was driving a 1962 Ford automobile in a northerly direction in the 5200 block of Main Street, a residential area, in the City of Columbia, at approximately 1 :45 P. M. on November 13, 1962, when the respondent's intestate, while crossing from the eastern side to the western side of said street, was struck by the said automobile. At the time the respondent's intestate was walking home from Arden Elementary School in which she was enrolled in the first grade. This school was located approximately one hundred and fifty to two hundred feet north of the point where the accident occurred. At the time of the accident there were no flashing lights showing a school zone but there was a school zone sign indicating a twenty mile per hour speed limit and such

was located approximately the same distance as the school from the point of collision. The posted speed limit at the place where the respondent's intestate was crossing the street was thirty-five miles per hour. Timothy M. Swindler admitted that he was familiar with the 5200 block of Main Street and with the location of Arden Elementary School and knew that school children were accustomed to be walking in the area at the time, since he traveled that way while going to and from Eau Claire High School where he was enrolled as a student.

This accident was investigated by C. J. Ballington, an officer with the Police Department of the City of Columbia, and he testified that the car driven by young Swindler laid down skid marks of an average distance of seventy-seven feet. He said Swindler told him that he was going within the speed limit. This witness further testified that he performed an experiment or test at the scene of the accident within thirty minutes thereafter. Using the Swindler car, with a witness in the car to observe the speed, without a change in weather conditions or the pavement, in approximately the identical place and course followed by Swindler, he applied brakes at a speed of thirty-five miles per hour and in bringing the car to a complete stop put down skid marks having an average distance of forty-three and one-half feet, which was thirty-two and one-half feet less than the average distance of Swindler's skid marks. Over the objection of the appellants, the testimony as to this experiment made out of court was admitted in evidence. One Jones, a witness in behalf of the respondent, testified that he was an experienced automobile driver and he observed the Swindler car from the window of his home just before the brakes thereon were applied. He estimated the speed of the Swindler car as being between forty-five and fifty-five miles per hour. This estimate was admitted over objection of the appellants made on the ground that this witness did not see the car a sufficient length of time within which to judge its speed.

The record shows that the witness Ballington was cross examined by the appellants concerning his out of court experiment and the witness Jones was cross examined concerning his lack of opportunity to observe the Swindler car for a sufficient length of time to serve as a basis for his opinion as to its speed. The appellants cross examined these two witnesses without reserving the objection previously made. This being true, the right to challenge the ruling of the trial judge admitting the testimony of these witnesses was thereby waived. *Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40, and *Grain Dealers Mut. Ins. Co. v. Julian,* 247 S. C. 89, 145 S. E. (2d) 685. The exception of the appellants charging error on the part of the trial judge in admitting the testimony of the witnesses Ballington and Jones is overruled.

The mother of the child, though she did not undertake to estimate the speed of the Swindler car, testified that he "was going too fast * * * was going faster than cars normally go" and that she was frightened at the speed at which he was driving.

All parties to this action admit that the accident occurred in a residential area and the maximum speed limit at such place was thirty-five miles per hour, as is fixed by Section 46-362 of the Code. This section provides that any speed in excess of such limit shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful. There was evidence from which the jury could find that young Swindler was exceeding the *prima facie* speed limit. In view of the admission of Timothy Swindler that he was familiar with the 5200 block of Main Street and knew that school children were accustomed to be walking in the area at the time, he was under duty to anticipate the likelihood of their running into and across the street, in obedience to childish impulses, and such imposed upon him the duty to exercise due care under the circumstances for their safety. Since the law recognizes that children act upon childish impulses there is imposed upon the

motorist, in order to reach the standard of ordinary care with respect to them, the duty to exercise more vigilance and caution than might be sufficient in the case of an adult. *Herring v. Boyd,* 245 S. C. 284, 140 S. E. (2d) 246.

The appellants further assert that the trial judge erred in refusing the motions of the appellants for a directed verdict or for judgment *non obstante veredicto* on the ground that the death of respondent's intestate resulted from the sole negligence of another or from an unavoidable accident or that young Swindler was faced with a sudden emergency, not of his own making, in which he acted as a person of ordinary prudence would have acted under the circumstances. The trial judge properly refused to grant these motions because there was evidence from which the jury could conclude that young Swindler was guilty of negligence which proximately caused the death of respondent's intestate. This being true, the trial judge could not, as a matter of law, hold that the death resulted from the sole negligence of another or was the result of an unavoidable accident, or that young Swindler was faced with a sudden emergency, not of his own making, in which he acted as a person of ordinary prudence would have acted under the circumstances.

The next question for determination is whether the trial judge erred in permitting, over objection, the introduction of a photograph of the deceased child. The admission or rejection of such a photograph is largely a matter within the trial court's discretion and the record before us does not warrant the conclusion that in permitting its reception in evidence he abused his discretion or committed error of law requiring reversal. We point out that at the time the photograph was offered in evidence the objection thereto was on the ground that "it isn't material". The motion for a new trial and the exception here exceeded the bounds of the original objection which was for immateriality only. We need not, therefore, consider the contention that the photograph was inflammatory. *Elliott v. Black River*

*Elec. Co-op.,* 233 S. C. 233, 104 S. E. (2d) 357, 74 A. L. R. (2d) 907.

The next question for determination is whether the trial judge erred in excluding proffered testimony about notice given by the school authorities to parents and children that children should cross at designated and marked crosswalks attended by policemen. It appears from the record that the appellants called as a witness the principal of the Arden School and propounded to such witness the question, "I will ask you if the school has any rule that children should only cross at crosswalks?" Upon objection by the respondent the witness was not permitted to answer this question. We have been pointed to no authority or statute which permits a school to make a "rule", the violation of which would be negligence, fixing the place where a child shall cross a street or public highway. Such a "rule" could not establish a standard of care by which to judge parents in their action against a third party whose negligence had caused the death of their child. In the case of *Long v. Tomlin,* 22 Tenn. App. 607, 125 S. W. (2d) 171, it was held that instructions to be given children walking on the highway contained in traffic regulations issued by a state department of finance and taxation were not admissible in an action for recovery for personal injuries sustained by three minor children, and the court said it was not aware of any recognized rule under which the regulations, which were not law, and which were not promulgated by anyone authorized by law to make such regulations, were admissible in evidence. In the case of *Swaney v. Peden Steel Co.,* 259 N. C. 531, 131 S. E. (2d) 601, it was held "that advisory codes which have not been given compulsory force by the legislative body, whether issued by governmental agencies or voluntary safety councils, are not admissible in evidence in civil actions."

However, the principal of the school was permitted to testify that at the intersection of Main and Ashley Streets, a distance of approximately one block from

where this accident occurred, there was a regular school crossing and a patrolman was on duty there. The mother of the deceased child admitted in her testimony that she knew that a patrolman was stationed at the intersection of Main and Ashley Streets to assist children in crossing the street. We can find no evidence in the record that the parents of the deceased child had any notice of the rule that children should only cross at the crosswalk. A disregard of the aforesaid "rule" by the mother could have no legal significance in the absence of notice to her of the existence of such a "rule". There is testimony that the parents considered it safer for their child to cross in the middle of the block under the supervision of the mother, rather than at the intersection heretofore referred to. The reason ascribed for this conclusion was that if the child crossed at the intersection of Main and Ashley Streets she would then have to walk on an unimproved shoulder of the road with her back to oncoming traffic and at certain places she would have to go onto the pavement of the highway because of bushes and obstructions on said shoulder. The respondent testified that the children on his side of the street crossed at the same place where his child did. At the time the child was struck by the Swindler car she was crossing the street under the supervision of her mother. The question of the sole negligence of the mother was for the jury to determine in the light of the foregoing testimony and the conduct of the mother at the time of the accident. The so-called "rule" of the school was not pertinent to this issue. The trial judge properly sustained an objection to the testimony as to the existence of such a "rule".

The appellants assert that the trial judge erred in refusing to charge the jury on unavoidable accident. We have carefully reviewed all of the evidence in this case and it is our conclusion that such does not raise a genuine issue upon the question of unavoidable accident. In *Collins v. Thomas*, 244 S. C. 128, 135 S. E. (2d) 754, this court stated that a charge on unavoidable accident was

"inappropriate where the evidence shows clearly that the accident was caused or contributed to by the negligence of one or more of the parties." The issue here was whether the child lost her life because of the causative negligence of the appellants or the sole negligence of her mother. The mother was one of the beneficiaries for whom this action was brought. We find no error in the refusal of the trial judge to charge the jury on unavoidable accident.

The appellants assert error on the part of the trial judge in refusing their motion for a new trial, absolute or *nisi,* on the ground of excessiveness of the verdict. We have held in numerous cases that this court will not set aside a verdict because the amount of it is such as to indicate merely undue liberality on the part of the jury. The power in such case to set it aside, or reduce it by granting a new trial *nisi,* rests with the trial judge alone. It is only when the verdict is so grossly excessive as to indicate that the jury was so moved by passion or prejudice, or other considerations not founded on the evidence and the instructions of the trial court, that it becomes the duty of this court, as well as of the trial court, to set it aside.

The trial judge said that he did not consider the verdict in this case unduly liberal nor did the amount thereof indicate caprice, passion or prejudice on the part of the jury. The appellants' contention that the verdict was excessive cannot be sustained.

The final question for determination is whether or not there was any evidence to sustain the jury's finding that the automobile in question was owned or maintained by Margaret B. Swindler, the mother of Timothy M. Swindler, for family purposes so as to impose liability upon her under the family purpose doctrine. She has preserved this question by appropriate motions in the lower court and exceptions here. In the case of *Porter v. Hardee,* 241 S. C. 474, 129 S. E. (2d) 131, this court said:

"The family purpose doctrine, upon which plaintiff relied to impose liability upon the defendant, has been adopted in

this State. Under this doctrine, 'where the head of the family maintains a motor vehicle for the general use, pleasure, and convenience of the family he is liable for the negligence of a member of the family having general authority to drive it while the vehicle is being so used.' 60 C. J. S. Motor Vehicles § 433a, p. 1066.

"A necessary requisite to the imposition of liability under the family purpose doctrine, therefore, is that the head of the family, own, maintain, or furnish the automobile and, where the head of the family does not own, maintain or furnish the automobile for general family use, he is not liable. 60 C. J. S. Motor Vehicles § 433c, p. 1070; *Norwood v. Coley*, 235 S. C. 314, 111 S. E. (2d) 550."

There is testimony that Timothy M. Swindler, the son of Margaret B. Swindler, at the time of the accident on November 13, 1962, was eighteen years of age and lived with his parents in the family home in Columbia; he was unmarried and was a regular student at Eau Claire High School where he was in the eleventh grade; he customarily drove the car to and from school each day and was on his way home from school when the accident occurred. The mother, Mrs. Margaret B. Swindler, using her own money, purchased the car new for cash on September 7, 1962, and on September 17, 1962, signed an application to the South Carolina Highway Department asserting herself to be the owner of the car and received a certificate of title in her own name, together with license plates for the year 1962-1963. It further appears that on September 15, 1962, she applied for and received the comprehensive and collision insurance policy issued in her name, as owner of the car, by New Hampshire Insurance Company. It further appears that on January 15, 1963, approximately two months after the accident with which we are here concerned, the mother obtained a loan from the Citizens and Southern National Bank and executed a chattel mortgage creating a lien on the car; and on January 21, 1963, she applied for and received from the Highway Department a new certificate of title which reflected the aforesaid bank as a lien holder.

The testimony offered by the appellants to refute and explain the foregoing evidence was that Margaret B. Swindler had purchased the car for her son out of her own funds and initially he was to pay her $100.00 per month and because these payments could not be met by the son she later financed the car at the aforesaid bank with lower payments; that her son paid her each month and she in turn paid the bank; that neither the father nor the mother drove the car and it was used exclusively by the son to go back and forth to school; that the son had earned money training horses and that during 1962 he cleared from that source $125.00 to $150.00 per month; and that the son purchased the gas and oil for the car and from time to time charged items to himself at a nearby service station which he paid.

Margaret B. Swindler does not contend that a verdict should have been directed in her favor on the strength of the testimony offered by the appellants but takes the position that a verdict should have been directed in her favor because of the failure of the respondent to prove the essential elements necessary to an application of the family purpose doctrine.

We think that under the authority of *Hewitt v. Fleming,* 172 S. C. 266, 173 S. E. 808, the trial judge was required to submit to the jury the question of whether Margaret B. Swindler was liable under the family purpose doctrine. That action was one brought against Ervin Fleming under the family purpose doctrine to recover damages for personal injuries as a result of negligent operation of an automobile by Beulah Thomas. The testimony shows that sometime prior to the collision in question, Fleming made a gift of the car to Beulah Thomas, his niece, who lived in his household, and that after that time Fleming did not exercise any further control over it but that Beulah used it as her absolute property, paying all bills for gas and oil used in connection with the car, as well as all repair bills. There was testimony that at the time of the gift of

the car to Beulah, the transfer card for said car was delivered by Fleming to her but that she neglected to have the transfer made in the office of the Highway Commissioner, and the records in such office showed that Fleming had title to the car at the time in question. It was the position of Fleming that the aforesaid evidence was not sufficient to show that he was liable to the plaintiff under the family purpose doctrine. This court, in affirming the refusal of the trial judge to grant the motion of Fleming for a directed verdict, said:

"\* \* \* In our opinion, since the car was registered with the state highway department in the name of Fleming, a presumption arose that he was the owner, and under the testimony it was proper to submit the question of ownership to the jury, and, further, his honor, the trial judge, committed no error in charging the jury in accordance with his holding. The family purpose doctrine is recognized in this state, see the case of *Davis v. Littlefield,* 97 S. C. 171, 81 S. E. 487, and the case of *Mooney v. Gilreath,* 124 S. C. 1, 117 S. E. 186; and, there being some testimony to be submitted to the jury on the question of ownership of the car in question, it was proper, under the record in this case, to refuse the motion for direction of a verdict and allow the jury to pass upon the other issues involved, as to whether Beulah was a member of the family of Fleming, as to whether she was acting as his agent at the time of the collision in question, and whether the car in question was provided by Fleming for general use and pleasure, or whether the car in question was purchased, provided, and kept by Fleming for his personal use exclusively."

It is undisputed that young Swindler used the automobile which was registered in the name of his mother for the principal purpose of driving to and from school and as was said in *Foster v. Farra,* 117 Or. 286, 243 P. 778, such "may well be considered a family use of the machine."

It is our conclusion that the evidence which we have briefly heretofore recited was sufficient to take the case of

the mother's liability for an injury resulting when her son was driving the car registered in her name to the jury and to warrant a verdict against her. It follows that the trial judge committed no error in refusing the motions of the mother for a directed verdict and judgment *non obstante veredicto* since there was evidence from which the jury could have, and did, find that the family purpose doctrine was applicable to her.

A witness called on behalf of the respondent was allowed to testify that her employer, an agency for the sale of collision and comprehensive insurance policies, had issued such a policy on the Ford automobile in question to Margaret B. Swindler on September 15, 1962, and that a subsequent endorsement was placed on said policy on January 15, 1963, showing a mortgage clause to the Citizens and Southern National Bank. There was no objection made to this testimony by the appellants. Thereafter, when this witness testified as to the difference in premium rates when issued to the mother or to the minor son, an objection was made by the appellants and such was overruled. This objection was waived by the appellants because they cross examined this witness upon the subject of rates without reserving the objection previously made.

The appellants charge the trial judge with error in refusing to charge the jury that even if the jury should find that the mother owned the automobile driven by her son, she would not be liable under the family purpose doctrine unless the automobile was also kept and furnished by the mother for the general use and convenience of the family and maintained by her for such purpose. We have examined the charge of the trial judge and he defined the family purpose doctrine in language that conforms to our decisions. He then charged the jury as follows:

"Now, the defendants by their evidence, as you have heard and observed, allege that the family purpose doctrine does not apply, because they contend that the automobile was not procured and maintained for the use and pleasure of

the family. They contend that it was bought solely for the boy and maintained by him. Now, if the plaintiffs have failed to convince you by the greater weight of the evidence that this automobile was procured and maintained by Mrs. Swindler for the pleasure and use of her family—if they fail to prove that to your satisfaction by the greater weight of the evidence, it would become your duty to eliminate her and not find a verdict against her, regardless of what you might find as to the other defendant, Timothy Swindler."

In our opinion the trial judge committed no error in his refusal to charge as requested because the substance of the request was fairly covered in the general charge given.

The exceptions of the appellants are overruled and the judgment of the lower court is affirmed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and LIONEL K. LEGGE, Acting Associate Justice, concur.